958 F.2d 372
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carrie J. MASENGILL; and Marjorie R. Davis, Plaintiffs-Appellants,
v.
William A. RYE, P.S.C.; William A. Rye; Prototype Money
Purchase Pension Plan and Trust for William A. Rye, P.S.C.;
and Prototype Profit Sharing Plan and Trust II for William
A. Rye, P.S.C., Defendants-Appellees,
Peoples Bank of Fleming County; and Donna Forace, Defendants.
 No. 90-6447.
 United States Court of Appeals, Sixth Circuit.
 March 18, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges; JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs appeal an order of the district court granting their motion for summary judgment on some claims, and entering summary judgment for defendants on other claims.
 
 
 2
 Defendant William A. Rye is a physician, and defendant William A. Rye, P.S.C., was his professional corporation. In 1979, the P.S.C. set up two employee benefit plans, and those plans are also defendants. Plaintiff Carrie J. Masengill was formerly married to Dr. Rye (they were divorced some time during 1984), and was employed as office manager by the P.S.C. Her sister, plaintiff Marjorie R. Davis, was employed as bookkeeper. Dr. Rye was the sole trustee and administrator of the plans and a named fiduciary within the meaning of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1102(a)(1). Participants in the plan were Dr. Rye, Masengill, Davis, and one other employee, Donna Forace. Ms. Forace was added as a party-defendant in order to determine her rights against the other defendants.
 
 
 3
 The P.S.C. contributed $27,500 to the two plans, an amount which was invested in a certificate of deposit with defendant Peoples Bank. Rye Properties, Inc., a corporation owned equally by Dr. Rye and his then wife Masengill, borrowed $125,000 from Peoples Bank to purchase a tavern. On May 14, 1981, as collateral for the loan, Dr. Rye, acting in his capacity as president of the corporation, signed a mortgage describing the tavern real property. Dr. Rye and Masengill also singed the mortgage in their individual capacities. That document included this language: "In addition to the foregoing described real property, Parties of the First Part [Rye Properties, Inc., Dr. Rye, and Masengill] do by these presents also pledge and assign to the Party of the Second Part [Peoples Bank] three (3) certificates of deposit totalling $74,000.00, and in the following denominations: -$27,500.00, $31,500.00 and $15,000.00." Following a default by the corporation, the bank applied the plans' CD against the amount owed on the loan.
 
 
 4
 When plaintiffs terminated their employment with P.S.C. in 1984, their vested interests in the plans amounted to at least $5,000 for Masengill, and $3,250 for Davis. Later in 1984, Davis requested payment of her interest and Masengill made the same request sometime during 1985, but Dr. Rye failed to respond. Dr. Rye sought bankruptcy relief in May 1985 and two years later received a discharge of his debts. In June 1987, the Department of Labor advised plaintiffs that Dr. Rye had pledged the plans' assets. In April 1988, plaintiffs' counsel requested information about the plans. Again, Dr. Rye failed to respond. Plaintiffs filed suit on November 9, 1988, raising claims seeking (1) a daily fine from Dr. Rye, under 29 U.S.C. § 1132(c)(1)(B), for his failure to provide requested information;[1] (2) payment of all benefits due them under the plans; (3) damages from Dr. Rye for breach of fiduciary duty arising out of the pledge of the plans' assets for his personal benefit; (4) damages resulting from Dr. Rye's failure to obtain a fidelity bond; and (5) recovery from the bank.
 
 
 5
 After the Rye defendants had answered the complaint, plaintiffs took Dr. Rye's deposition and, based largely upon his responses, filed a motion for summary judgment. Almost seven months later, those defendants were permitted, over plaintiffs' objections, to file an amended answer raising two additional defenses--that plaintiffs' claims against Dr. Rye for breach of his fiduciary duty were barred by the applicable ERISA statute of limitations, and that Masengill's claim against Dr. Rye arising out of his pledge of the plans' CD was discharged by bankruptcy. The district court sustained the bank's motion to dismiss, and that order has not been appealed.
 
 
 6
 The district court granted summary judgment to plaintiffs on the first claim, and awarded each $4,375 computed on the basis of $25 per day from the date their attorney had requested information until the action was filed. Although the plans were insolvent, summary judgment was granted to plaintiffs on the second claim against the plan defendants. The district court then granted summary judgment to Dr. Rye on the third and fourth claims, even though he had not sought summary judgment. Plaintiffs appeal the amount of the award on the first claim, and the granting of summary judgment to Dr. Rye on the third and fourth claims.
 
 
 7
 The district court noted that the facts were uncontroverted that Dr. Rye, as administrator of the plans, had failed to provide plan information once a clear request was made for that information. Under 29 U.S.C. § 1132(c)(1)(B), the amount of relief to be assessed against Dr. Rye was within the district court's discretion. In view of the circumstances surrounding this case, and the degree of prejudice caused plaintiffs, we are unable to say that the district court abused its discretion in assessing $25 per day against Dr. Rye for each plaintiff.
 
 
 8
 We also agree with the district court's determination that there was no genuine issue of material fact concerning Dr. Rye's being a fiduciary as contemplated by ERISA, and that, absent the statute of limitations and bankruptcy defenses, plaintiffs would be entitled to summary judgment on the breach of fiduciary duty claims. Nor do we believe that the district court abused its discretion in permitting the amended answer which brought those defenses to the attention of the court.
 
 
 9
 However, we are unable to agree with the court's conclusion that Dr. Rye was entitled to summary judgment on those defenses.
 
 
 10
 Under ERISA's statute of limitations governing the bringing of actions relating to a breach of fiduciary duty,[2] plaintiffs must have brought their action within three years after they had actual knowledge of Dr. Rye's breach, but in no event more than six years after the last action which constituted a part of the breach (or in the case of his omission to obtain a fidelity bond, six years after the latest date on which he could have satisfied his obligation to obtain a bond which would provide protection to the plans); except that "in the case of fraud or concealment," not later than six years after the date of discovery of the breach.
 
 
 11
 In their complaint, plaintiffs alleged that Dr. Rye, as sole trustee and administrator of the plans, had breached his fiduciary duty by pledging assets of the plans--the $27,500 certificate of deposit--as collateral for a personal loan, and by failing to obtain fidelity bonding. No issue of fact existed as to Rye's having purported to pledge[3] the plans' CD as part of the mortgage he signed on May 14, 1981, and his having failed to obtain a fidelity bond.
 
 
 12
 As to the pledge, then, if plaintiffs had actual knowledge that Rye was pledging an asset of the plans as collateral for a personal loan, they had until May 1984 to bring their action. No one contends Davis knew in May 1981. As for Masengill, the court concluded that she was "charged with the contents and terms of the mortgage as a matter of law by signing her signature to it. Thus she had knowledge." No authority was cited in support of that proposition. It seems to us that it is one thing to say that a person who pledges her own property is "charged" with knowledge that she has done so, at least in the absence of evidence to the contrary. But, here, because the CD was not Masengill's to pledge, her signature on the document was meaningless insofar as giving legal effect to the pledge was concerned. Furthermore, the statute of limitations speaks of "actual" knowledge, as opposed to constructive or charged or implied knowledge. While signing the document may be circumstantial evidence that she knew what the document was all about, here the mortgage did not identify the CD other than to list its face value along with that of two other CDs. As the court acknowledged, the summary judgment evidence was that Masengill had not read the document prior to signing it. Accordingly, there remained an issue of fact as to whether she had actual knowledge that Dr. Rye was pledging a CD belonging to the plans as collateral for a personal loan.
 
 
 13
 Applying the six-year cap, defendants had at least until May 1987, unless there was fraud or concealment, in which event they would have six years from the date of discovery of the pledge. Under the summary judgment evidence before the court, plaintiffs would have discovered the pledge when the Labor Department notified them of it in June 1987, and the running of the statute of limitations would be tolled until then if there was fraud or concealment.
 
 
 14
 Plaintiffs maintained in a memorandum supporting their motion for summary judgment that there had been fraud and concealment. The district court said plaintiffs were required to plead fraud in their complaint, citing Fed.R.Civ.P. 9(b). That rule of pleading, however, does not apply in the posture of this case, since none of plaintiffs' claims for affirmative relief rested upon fraud. Instead, fraud came up only in the context of the Rye defendants having raised the statute of limitations as a defense in their amended answer.
 
 
 15
 Had defendants sought summary judgment on the basis of the statute of limitations defense, plaintiffs would have had the burden of producing summary judgment evidence to support their position on fraud and concealment. Here, defendants did not seek summary judgment. Instead, the district judge sua sponte treated the cause as though it were before him on defendants' motion for summary judgment. By doing so without advance notice to the parties, plaintiffs were given no opportunity to produce the summary judgment evidence required to meet their burden. Understandably, the evidence they already had submitted was inadequate because it was the product of the discovery they had conducted to serve as the basis for their motion for summary judgment. That discovery and their motion for summary judgment predated defendants' raising the statute of limitations and bankruptcy defenses. Accordingly, summary judgment for Dr. Rye, on the statute of limitations defense, was premature.
 
 
 16
 The second defense raised by the amended answer was that plaintiff Masengill was barred from asserting a claim against Dr. Rye individually, since he had received a discharge in bankruptcy. The district court concluded that her claim against him had been discharged in bankruptcy, since she was charged with knowledge that Dr. Rye had pledged plan assets, and had not asserted her breach of fiduciary duty claim in the bankruptcy, even though she was listed as a creditor for debts arising out of their divorce settlement and had participated in the bankruptcy proceedings.
 
 
 17
 Because the court's ruling was predicated upon its premature conclusion that Masengill knew of the pledge, summary judgment on the bankruptcy defense also was premature.
 
 
 18
 Although in dismissing the breach of fiduciary duty claims the district court did not specifically deal with the claim that Dr. Rye had failed to obtain a fidelity bond, that claim apparently was dismissed on the statute of limitations ground. Summary judgment on this claim also was premature, for the reasons stated in the foregoing discussion.
 
 
 19
 The district court's order is affirmed in part and reversed in part, and this cause is remanded to the district court for further proceedings consistent with this opinion and according to law.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 29 U.S.C. § 1132(c)(1)(B) provides that:
 Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 
 
 [2]
 § 1113. Limitation of actions
 No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part after, the earlier of--
 (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
 (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.
 29 U.S.C. 1113 (1991).
 
 
 [3]
 In view of the paucity of the record at this stage in the proceedings, it is not apparent to us whether Dr. Rye, in view of his having signed the mortgage document only in his personal capacity and as president of Rye Properties, Inc., had the capacity to assign and pledge the CD to the bank, and whether the bank received a valid assignment